IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| JACLYN PHILLIPS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | 2:10cv1431 |
| v. | ) | **Electronic Filing** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

February 10, 2012

**I.    INTRODUCTION**

Jaclyn Phillips ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–433, 1381–1383f ("Act").  This matter comes before the court on cross motions for summary judgment.  (ECF Nos. 10, 12).  The record has been developed at the administrative level.  For the following reasons, Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment is GRANTED.

## II. PROCEDURAL HISTORY

Plaintiff filed for DIB and SSI with the Social Security Administration August 27, 2007, claiming an inability to work beginning August 6, 2006 due to limitations stemming from various mental impairments. (R. at 93 – 98)[1]. Plaintiff was initially denied benefits on November 30, 2007. (R. at 75 – 83). A hearing was scheduled for May 6, 2009, and Plaintiff appeared to testify represented by counsel. (R. at 29 – 54). A vocational expert also testified. (R. at 29 – 54). The Administrative Law Judge ("ALJ") issued his decision denying benefits to Plaintiff on July 2, 2009. (R. at 6 – 28). Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which request was denied on August 31, 2010, thereby making the decision of the ALJ the final decision of the Commissioner. (R. at 1 – 3).

Plaintiff filed her Complaint in this court on December 9, 2010. (ECF No. 3). Defendant filed his Answer on April 6, 2011. (ECF No. 5). Cross motions for summary judgment followed.

## III. STATEMENT OF THE CASE

In his decision, the ALJ concluded that Plaintiff suffered from severe medically determinable impairments in the way of borderline intellectual functioning, attention deficit hyperactivity disorder ("ADHD"), bipolar disorder, oppositional defiant disorder, obesity, sleep apnea, and crack cocaine substance abuse. (R. at 13). The ALJ found that Plaintiff was disabled from all work as a result of functional limitations stemming from her impairments. (R. at 15 – 16). However, the ALJ further concluded that if Plaintiff refrained from further drug abuse, she would be capable of sedentary work involving no more than simple instructions, simple,

---

[1] Citations to ECF Nos. 6 – 6-11, the Record, *hereinafter*, "R. at __."

repetitive tasks, fifth grade-level reading and mathematics skills, and simple decision making, and requiring no close contact or proximity with others, direct interaction with the public, intensive supervision, assembly line pace work, and changes in the work setting. (R. at 17 – 18). Based upon the testimony of the vocational expert, the ALJ determined that despite the aforementioned limitations, Plaintiff would qualify for a significant number of jobs in existence in the national economy. (R. at 27 – 28). Therefore, Plaintiff was not awarded benefits. (R. at 27 – 28).

**IV.    STANDARD OF REVIEW**

To be eligible for social security benefits under the Act, a claimant must demonstrate to the Commissioner that he or she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).

When reviewing a claim, the Commissioner must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920. The Commissioner must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App'x 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R.

§404.1520(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

Judicial review of the Commissioner's final decisions on disability claims is provided by statute, and is plenary as to all legal issues. 42 U.S.C. §§ 405(g)[2], 1383(c)(3)[3]; *Schaudeck v. Comm'r Soc. Sec.*, 181 F. 3d 429, 431 (3d Cir. 1999). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based; the court will review the record as a whole. *See* 5 U.S.C. §706. The district court must then determine whether substantial evidence existed in the record to support the Commissioner's findings of fact. *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002).

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Ventura v.*

---

[2] Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business

42 U.S.C. § 405(g).

[3] Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

*Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). If the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson,* 402 U.S. at 390. When considering a case, a district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh the evidence of record; the court can only judge the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 – 97 (1947). The court will not affirm a determination by substituting what it considers to be a proper basis. *Chenery*, 332 U.S. at 196 – 97. Further, "even where this court acting *de novo* might have reached a different conclusion . . . so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings." *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3d Cir. 1986).

## V. DISCUSSION

Plaintiff objects to the determination of the ALJ, arguing only that the ALJ's analysis should never have moved beyond Step 3, because Plaintiff met the disability requirements of impairment listing 12.05(c) (Mental Retardation), as specified under 20 C.F.R., Pt. 404, Subpt. P, App'x 1. Listing 12.05 states, in relevant part, that:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

5

> \*\*\*
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R., Pt. 404, Subpt. P, App'x 1. The Court of Appeals for the Third Circuit has read this listing as requiring a claimant to make two showings: (1) that evidence demonstrates subaverage general intellectual functioning with deficits in adaptive functioning prior to a claimant reaching age twenty-two, and (2) that evidence demonstrates an IQ score of 60 – 70 in conjunction with a physical or mental impairment. *Cortes v. Comm'r Soc. Sec.*, 255 Fed. App'x 646, 651 (3d Cir. 2007); *Stremba v. Barnhart*, 171 Fed. App'x 936, 938 (3d Cir. 2006). *See also Markle v. Barnhart*, 324 F. 3d 182, 187 (3d Cir. 2003).

Plaintiff makes arguments citing error by the ALJ with respect to each required showing under Listing 12.05(c). The court need only address one argument to dispose of this case, however. Plaintiff correctly cites that in order to be found disabled under Listing 12.05(c), there must exist a valid IQ score between 60 and 70. (ECF No. 11 at 7 – 11). Plaintiff also correctly insists that the lowest IQ score must be considered by an ALJ when concluding that a claimant's IQ falls between 60 and 70. Regardless, Plaintiff was incorrect in asserting that Dr. Cohen's most recent intelligence testing scores should not be considered in making that determination.

> 20 C.F.R., Pt. 404, Subpt. P, App'x 1, 12.00(D)(6)(c) (Mental Disorders) states that:
>
> Due to such factors as differing means and standard deviations, identical IQ scores obtained from different tests do not always reflect a similar degree of intellectual functioning. The IQ scores in 12.05 reflect values from tests of general intelligence that have a mean of 100 and a standard deviation of 15; e.g., the Wechsler series. IQs obtained from standardized tests that deviate from a mean of 100 and a standard deviation of 15 require conversion to a percentile rank so that we can determine the actual degree of limitation reflected by the IQ scores. *In cases where more than one IQ is customarily derived from the test*

6

> *administered,* e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series*, we use the lowest of these in conjunction with 12.05*.

(emphasis added). Plaintiff contends that there is an established assumption within the Third Circuit that IQ scores generated in a claimant's childhood are necessarily static over the course of his or her life, and should be blindly accepted as equally applicable in a claimant's adulthood – even in the face of more contemporaneous findings which do not suggest a degree of intellectual limitation as severe as earlier found. *Markle* and 12.00(D)(6)(c) do not support such a holding.

First, Plaintiff misapplies *Markle* in her argument. There, the Court of Appeals for the Third Circuit distinguished the facts in *Markle* from those in another case wherein an ALJ relied upon evidence of a traumatic event to show that mental retardation was not induced until well after the claimant was twenty-two years of age. *Markle*, 324 F. 3d at 188. In the present case, the ALJ looked to IQ findings by Dr. Cohen to find that mental retardation was not an impairment at the time Plaintiff applied for benefits – not that the onset of Plaintiff's mental retardation occurred after she turned twenty-two years of age.

Second, 12.00(D)(6)(c) only stands for the proposition that when a medical source administers a particular intelligence test that produces several categories of IQ score, the ALJ should look to the lowest of those scores produced – not, as Plaintiff believes, that the ALJ must only consider the single lowest score of all intelligence tests over the course of an entire medical record, regardless of disparity or passage of time.

Academic records during Plaintiff's enrollment in grade school through high school indicated that Plaintiff met the criteria to be considered educable mentally retarded, and she required the assistance of a special educational program. (R. at 240 – 93). Intelligence testing

conducted in 1998, when Plaintiff was twelve years of age, revealed Plaintiff's verbal IQ to be 73, her performance IQ to be 66, and her full-scale IQ to be 68. (R. at 240 – 93). Her general verbal abilities were borderline, and her general, nonverbal abilities were deficient. (R. at 240 – 93). Her adaptive behavior scores were in the normal range. (R. at 240 – 93). Yet, Plaintiff still met the federal guidelines for mental retardation. (R. at 240 – 93). Plaintiff also required more support than others her age. (R. at 240 – 93).

By twelfth grade, Plaintiff wrote only at the level of an eighth grade student, and had the mathematics skills of a fifth grade student. (R. at 240 – 93). At that time, Plaintiff's strengths were noted to be punctuality, dependability, and a positive attitude. (R. at 240 – 93). She was capable of writing at a basic level, and was able to complete simple math problems. (R. at 240 – 93). However, her weaknesses included organization and completing work. (R. at 240 – 93). Plaintiff was provided extra time for assignments and was provided extra instruction for complex tasks. (R. at 240 – 93). In spite of her limitations, it was indicated that, generally, Plaintiff required little assistance during her final year in high school. (R. at 240 – 93). Plaintiff graduated with a 3.389 grade point average, and was ranked 17 in a class of 116. (R. at 33, 252). She attempted general courses at community college for one-and-one-half years following graduation, but ultimately dropped out. (R. at 34).

On November 13, 2007, when Plaintiff was twenty-two years of age, Charles M. Cohen, Ph.D. completed a mental status evaluation on behalf of the Bureau of Disability Determination. (R. at 216 – 22). Plaintiff arrived at her appointment on-time, and was accompanied by her grandmother. (R. at 216 – 22). She used public transportation, and indicated that she was capable of traveling independently. (R. at 216 – 22). She asserted that she was completely independent. (R. at 216 – 22).

Plaintiff complained of difficulties with bipolar disorder and ADHD. (R. at 216 – 22). Plaintiff had been seeking treatment at Mercy Behavioral Health ("Mercy") in Pittsburgh, Pennsylvania, since the age of five. (R. at 216 – 22). She was under the care of a psychiatrist at Mercy, and she also met regularly with a case manager from Mercy. (R. at 216 – 22). Her psychiatric medications were Strattera and Abilify, at that time. (R. at 216 – 22). Plaintiff forgot to take her medication on the day of Dr. Cohen's evaluation – and indicated that this was not unusual. (R. at 216 – 22). Plaintiff reported feeling "good," but also stated that she had recently been having trouble with physically and verbally abusive outbursts at home. (R. at 216 – 22). Plaintiff denied issues with drug and alcohol abuse. (R. at 216 – 22). She reported sleeping well. (R. at 216 – 22).

Plaintiff was noted to have graduated from high school with the help of special educational support services. (R. at 216 – 22). She attempted community college, but dropped out. (R. at 216 – 22). Her longest period of employment was from 2002 until 2004 at Eat'n Park in Dormont, Pennsylvania. (R. at 216 – 22). Plaintiff stated that as long as she took her medication, she was able to function well. (R. at 216 – 22). Plaintiff had a spate of other jobs, but did not manage to maintain employment because she was allegedly unable to meet the demands. (R. at 216 – 22).

During the course of the evaluation, Dr. Cohen noted Plaintiff to be alert and oriented, to be neatly and cleanly attired, to make good eye contact, and to exhibit no abnormality in behavior or psychomotor activity. (R. at 216 – 22). Mood was euthymic and stable, there were no outward manifestations of depression, anxiety, delusions, or hallucinations, thought productivity was normal, goal-directed, and coherent, and there was no suicidal or homicidal ideation. (R. at 216 – 22). Plaintiff's abstract reasoning and fund of knowledge were slightly

below average, and her insight was limited, but her memory was intact, she was capable of simple math, her judgment was good, and she appeared to be reliable. (R. at 216 – 22).

Dr. Cohen performed two intelligence-measuring tests with Plaintiff. (R. at 216 – 22). The tests indicated that Plaintiff had a verbal IQ of 80, a performance IQ of 74, and a full-scale IQ of 75. (R. at 216 – 22). These scores indicated borderline intellectual functioning. (R. at 216 – 22). Plaintiff's concentration and task persistence were fair. (R. at 216 – 22). Her ability to manage stress also appeared to be fair. (R. at 216 – 22). Motivation was poor. (R. at 216 – 22). Dr. Cohen diagnosed ADHD and bipolar disorder, both fairly well-controlled with medication, and borderline intellectual functioning. (R. at 216 – 22). Plaintiff's prognosis was guarded; however, if she were to consistently take her medication, she would be capable of appearing at work on-time, dealing effectively with authority figures and peers, and concentrating sufficiently to perform simple, repetitive tasks. (R. at 216 – 22). Plaintiff was found to be markedly limited with respect to understanding, remembering, and carrying out detailed instructions. (R. at 216 – 22). Yet, with proper medication, Dr. Cohen felt that Plaintiff could function well. (R. at 216 – 22).

> Once again, Listing 12.05(c) states:
>
> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the *evidence demonstrates or supports onset of the impairment before age 22.*

20 C.F.R., Pt. 404, Subpt. P, App'x 1 (emphasis added). A plain reading of this listing implies that a claimant must provide proof of the continuous presence of mental retardation. Objective testing must confirm mental retardation at a time prior to a claimant having reached the age of twenty-two, and continuing until the point at which a claimant sought disability benefits.

Here, while Plaintiff may have shown that she was mentally retarded prior to reaching twenty-two years of age, she failed to make such a showing – based upon IQ scores – following that time. The lowest of the scores produced by Dr. Cohen's testing after Plaintiff was twenty-two, was 74. This does not meet Listing 12.05(c) requirements. Plaintiff presents no evidence to attack the veracity of Dr. Cohen's objective findings. Moreover, there were no other scores from the relevant time period of Plaintiff's adulthood which indicated that she was within the range of IQ scores which qualified her for benefits under Listing 12.05(c).

While it is true that the ALJ must use the lowest of the scores generated by a particular intelligence test for 12.05(c) purposes, the listing does not establish that IQ scores which were recorded when a claimant was twelve years of age are still applicable – and must be used – when a claimant reaches twenty-two years of age. That Plaintiff qualified as mentally retarded prior to age twenty-two does not mean that such was the case when Plaintiff applied for benefits. The scores derived from testing conducted by Dr. Cohen were affirmative evidence of Plaintiff's intellectual functioning at the time the scores were recorded, and the ALJ was entitled to rely on this evidence when determining whether Plaintiff met Listing 12.05(c).

Plaintiff has failed to meet her undisputed burden of providing IQ scores between 60 and 70. The IQ scores obtained through testing with Dr. Cohen illustrated that Plaintiff's intellectual functioning at twenty-two years of age was not so deficient that it met the requirements of Listing 12.05(c). Discussion of the remainder of Plaintiff's argument is not, therefore, warranted.

I. **CONCLUSION**

Based upon the forgoing, the decision of the ALJ not to find Plaintiff disabled at Step 3 was ultimately supported by substantial evidence from the record. Accordingly, Plaintiff's Motion for Summary Judgment is denied, Defendant's Motion for Summary Judgment is granted, and the decision of the ALJ is affirmed. Appropriate Orders follow.

s/ David Stewart Cercone  
David Stewart Cercone  
United States District Judge

cc.   Lindsay Fulton Osterhout, Esq.  
  Albert Schollaert  
  Assistant United States Attorney

  (*Via CM/ECF Electronic Mail*)